UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

Felix Fargas,

                    Plaintiff,

              - v.-                              13 Civ. 4443 (JGK)

                                                 OPINION AND ORDER
Cincinnati Machine, LLC and MAG IAS,
LLC,

                    Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Felix Fargas, commenced an action against

the defendants Cincinnati Machine, LLC ("Cincinnati Machine")

and MAG IAS, LLC ("MAG") in the New York State Supreme Court,

Bronx County, for injuries he allegedly sustained when operating

an industrial machine manufactured by a predecessor of MAG.  The

defendants removed the action to this Court under 28 U.S.C.

§§ 1441 and 1446 based on diversity of citizenship jurisdiction,

28 U.S.C. § 1332.  The defendants now move to dismiss the

Complaint pursuant to Rule 12(b)(6), or, in the alternative, to

convert the motion to a summary judgment motion pursuant to Rule

12(d) of the Federal Rules of Civil Procedure.  Because the

parties have not engaged in discovery and the plaintiff has not

had the opportunity to gather and present evidence in opposition

to the defendants' motion, the Court declines to convert the

motion into one for summary judgment.  See Kouakou v.

Fideliscare N.Y., 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012);

Snyder v. Fantasy Interactive, Inc., No. 11 Civ. 3593, 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012); Krapf v. Prof'l Collection Servs., Inc., 525 F. Supp. 2d 324, 326 (E.D.N.Y. 2007).

The principal issue on this motion is whether the Ohio statute of repose should be applied to bar product liability claims by a New York resident based on an accident that occurred in New York from an allegedly defective machine manufactured in Ohio.  For the reasons explained below, the Ohio statute of repose should not be applied, and the motion to dismiss is **denied**.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Grp. LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief

2

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken.  See Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).


## II.

There is no dispute with respect to the following facts for
purposes of this motion to dismiss.  The plaintiff, a resident
of the State of New York, was employed by Metallized Carbon
Corporation located in Ossining, New York.  (Compl. ¶¶ 1, 13.)
Defendant MAG is a Delaware limited liability company with its
principal place of business in Michigan.  (Notice of Removal

¶ 6.)  Defendant Cincinnati Machine was a Delaware limited liability company with its principal place of business in Cincinnati, Ohio, which subsequently merged into MAG.  (Compl. ¶¶ 2, 7; Notice of Removal ¶ 5.)[1]

The plaintiff alleges that, on or about January 12, 2012, he was severely injured while working on a milling machine during the course of his employment.  (Compl. ¶ 14.)  The plaintiff alleges that  his fingers were entrapped in the moving parts of the machine.  (Compl. ¶ 15.)  The plaintiff alleges that the defendants and/or their predecessors "manufactured, sold, delivered, serviced, maintained, inspected and or installed" the machine, which was marked with the designation "CINCINNATI," "FILMATIC 34-20," and "6M3H5J-61."  (Compl. ¶ 11.)

The plaintiff brings two claims alleging product liability (the first and third counts), and one claim alleging breach of warranty.  In his product liability claims, the plaintiff alleges that the machine was defectively designed and/or manufactured: specifically, the plaintiff alleges that the machine lacked guarding or safety devices "to prevent entrapment of the operator's extremities in the moving parts" of the machine, and that the machine lacked proper warnings, caution signs, or stop mechanisms.  (Compl. ¶¶ 17-18, 29-31.)  The

---

[1] None of the members of MAG are citizens of New York, and there is complete diversity between the plaintiff and the defendants. (Notice of Removal ¶ 12.)

plaintiff further alleges that the defendants were responsible for such defects, which caused his injuries.  (Compl. ¶¶ 32-37.) The plaintiff also alleges that the defendants and/or their predecessors permitted the machine with such defects to enter into service without proper warnings or provision for training. (Compl. ¶¶ 45-52.)

**III.**

The sole ground on which the defendants seek to dismiss the product liability claims is an Ohio statute of repose, which provides that "no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser . . . ."  Ohio Rev. Code Ann. § 2305.10(C)(1) [hereinafter "the Ohio statute of repose"].  No statute of repose exists for product liability claims under New York law.  The defendants contend that the Ohio statute of repose applies and bars the plaintiff's action because the machine at issue was manufactured in Ohio and first delivered to an Illinois buyer in 1961, which was more than ten years prior to the commencement of this action.[2]  Therefore, the principal

---

[2] The Complaint contains no indication of the year in which the machine was first delivered, although the plaintiff, in his opposition to the motion, has not challenged the defendants' contention that the machine was manufactured and first delivered

issue before the Court is a choice-of-law question.  The
defendants' motion must be denied if New York law, which does
not contain a statute of repose, applies in this case.

A federal district court sitting in diversity jurisdiction
must apply the choice-of-law principles of the forum state, in
this case New York.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313
U.S. 487, 496–97 (1941).  Under New York law, for choice-of-law
purposes, substantive laws and legal rules are classified into
two categories known as "conduct-regulating" rules and "loss-
allocating" rules.  Padula v. Lilarn Props. Corp., 644 N.E.2d
1001, 1002 (N.Y. 1994).  Conduct-regulating rules are defined as
those that "have the prophylactic effect of governing conduct to
prevent injuries from occurring."  Id.  "If conflicting conduct-
regulating laws are at issue, the law of the jurisdiction where
the tort occurred will generally apply because that jurisdiction
has the greatest interest in regulating behavior within its
borders."  Id. (quoting Cooney v. Osgood Mach., 612 N.E.2d 277,
280 (N.Y. 1993)) (internal quotation marks omitted).  On the
other hand, loss-allocating rules "are those which prohibit,
assign, or limit liability after the tort occurs."  Id.  In
cases in which conflicting loss-allocating rules are at issue,
New York courts apply the choice-of-law rules set forth in

more than ten years ago.  The Court assumes for purposes of this
motion that the Ohio statute of repose, if found applicable in
this case, would bar the plaintiff's product liability claims.

Neumeier v. Kuehner, 286 N.E.2d 454 (N.Y. 1972), known as the
"Neumeier rules." See Padula, 644 N.E.2d at 1002-03; Cooney,
612 N.E.2d at 280-81; Elson v. Defren, 726 N.Y.S.2d 407, 412
(App. Div. 2001).

The defendants argue that, because the statute of repose
places a time limit on the duty and standard of care owed by a
manufacturer to the consumers, the statute is a conduct-
regulating rule. This argument is without merit. The statute
of repose does not prescribe a standard of care but merely cuts
off all product liability claims ten years after the initial
delivery of the product. Therefore, the statute of repose does
not "prevent injuries from occurring," Padula, 644 N.E.2d at
1002, and cannot properly be classified as a conduct-regulating
rule. While the statute of repose can technically extinguish a
cause of action before a tort even occurs, the practical effect
of the statute is to insulate a manufacturer from tort
liabilities after the repose period has expired. Therefore, the
Ohio statute of repose at issue is better classified as a loss-
allocating rule, for which New York courts apply the Neumeier
rules to decide choice of law questions. See Crowder v. A.W.
Chesterton Co., No. 105768/08, 2009 N.Y. Misc. LEXIS 4383, at *8
(Sup. Ct. Aug. 5, 2009) ("[T]he statute of repose is one of loss
allocation and, as such, the court will look at the interest of

each jurisdiction in deciding which law to apply.  The <u>Neumeier</u>
. . . case is dispositive with regard to this analysis.").

Although the <u>Neumeier</u> rules were formulated in the context
of the so-called "guest statutes," namely, statutes governing
the rights of recovery between automobile passengers and drivers
in traffic accidents, New York courts have expanded the
application of the <u>Neumeier</u> rules to other loss-allocating
rules.  <u>Cooney</u>, 612 N.E.2d at 281.  The New York Court of
Appeals has explained the <u>Neumeier</u> rules as follows:

> Under the first <u>Neumeier</u> rule, when the
> driver-host and passenger-guest share a
> common domicile, that law should control.
> Indeed, when both parties are from the same
> jurisdiction, there is often little reason
> to apply another jurisdiction's loss
> allocation rules. . . .
>
> The second <u>Neumeier</u> rule addresses "true"
> conflicts, where the parties are domiciled
> in different States and the local law favors
> the respective domiciliary. . . . In
> essence, . . . the second <u>Neumeier</u> rule
> adopts a "place of injury" test for true
> conflict guest statute cases.
>
> Finally, the third <u>Neumeier</u> rule, applicable
> to other split-domicile cases, provides that
> the usually governing law will be that of
> the place where the accident occurred,
> unless "'displacing that normally applicable
> rule will advance the relevant substantive
> law purposes without impairing the smooth
> working of the multistate system or
> producing great uncertainty for
> litigants[.]'"  This rule, too, generally
> uses the place of injury, or locus, as the
> determining factor.

<u>Id.</u> at 281 (internal citations omitted).

The Cooney court addressed a situation similar to the
present case.  In Cooney, a Missouri resident was injured in
Missouri while operating a machine distributed by a New York
corporation, and the plaintiff sued the distributor in a New
York court.  Cooney, 612 N.E.2d at 279.  The distributor
commenced a third-party action against the plaintiff's employer,
a Missouri corporation, seeking contribution.  Id.  Contribution
claims against the employer were allowed under New York law but
not under the Missouri workers' compensation law.  Id.  The
court observed that the case presented a "true" conflict:
Missouri law protected its domiciliary, the employer, from
contribution claims, while New York law allowing contribution
claims against the employer would be more favorable to the
distributor, a New York domiciliary.  Id. at 283.  Each state
had a legitimate interest in applying its own law: Missouri had
an interest in maintaining the integrity of its workers'
compensation scheme, which was part of the state's efforts to
restrict the cost of industrial accidents and to afford a fair
basis for predicting what these costs would be, id. at 282-83;
on the other hand, New York had an interest in basic fairness to
litigants by allowing a defendant that paid more than its fair
share of a judgment to recover the difference from a
codefendant, id. at 283.  These competing legitimate interests
of the two states presented an irreconcilable, "true" conflict

because "[i]t is evident that one State's interest cannot be accommodated without sacrificing the other's." Id.  Therefore, the court held that the second Neumeier rule applied, and determined that the law of Missouri, where the plaintiff was injured, governed.  Id. at 283.

The Cooney court explained that, in cases involving such "true" conflicts, applying the law of the jurisdiction in which the injury occurred "reflects application of a neutral factor that favors neither the forum's law nor its domiciliaries," id. at 283, thus "rebutting an inference that the forum State is merely protecting its own domiciliary or favoring its own law," id. at 281-82.  In addition, using the place of injury for the choice of law would also advance New York's interest in discouraging forum-shopping.  Id. at 283.

In this case, it is undisputed that the machine at issue was manufactured in Ohio and the manufacturer of the machine was domiciled in Ohio, and that the plaintiff is a domiciliary of New York who was injured in New York.  Thus, the present case involves a "true" conflict similar to the one presented in Cooney, because the law of each jurisdiction favors its own domiciliary: New York law permits recovery and therefore favors the plaintiff, a New York domiciliary, while Ohio law bars recovery and therefore favors the manufacturer, an Ohio domiciliary.  The interests of the two states are also

irreconcilable.  The State of Ohio has a legitimate interest in
"enhanc[ing] the competitiveness of Ohio manufacturers by
reducing their exposure to disruptive and protracted liability
with respect to products long out of their control." See Groch
v. Gen. Motors Corp., 883 N.E.2d 377, 406 (Ohio 2008) (quoting
Ohio General Assembly's statement of intent in passing the
statute of repose).  The State of New York has a competing
legitimate interest in protecting its residents from defective
products even in cases in which the product was delivered a long
time ago.  The interest of New York is therefore in direct
conflict with the interest of Ohio, and applying either
jurisdiction's law would undercut the other jurisdiction's
public policy.  Therefore, this case presents an irreconcilable,
"true" conflict, to which the second Neumeier rule applies,
requiring the application of the law of the jurisdiction in
which the injury occurred, namely, New York.  See Cooney, 612
N.E.2d at 283.

    The defendants argue that the place of the injury should
not govern in this case, because the alleged wrongful conduct,
specifically, the design and manufacture of the machine,
occurred in Ohio.  The defendants point to a few cases in which
courts have held certain product liability claims to be governed
by the law of the jurisdiction in which the product was designed
and manufactured.  See, e.g., Carlenstolpe v. Merck & Co., 638

F. Supp. 901, 910 (S.D.N.Y. 1986) (citing <u>Long v. Pan Am. World Airways, Inc.</u>, 213 N.E.2d 796 (N.Y. 1965), for the proposition that "the place of the wrong [is] where defendant is located and where his allegedly wrongful behavior has occurred, rather than . . . the place of the injury"); <u>Champlain Enters., Inc. v. United States</u>, 945 F. Supp. 468, 473 (N.D.N.Y. 1996); <u>see also</u> <u>Ornelas v. J. Racenstein & Co., Inc.</u>, No. 00 Civ. 01511, 2001 WL 91628 at *2 n.1 (S.D.N.Y. Feb. 2, 2001) (citing <u>Champlain Enters.</u>, 945 F. Supp. at 473-74); <u>Elam v. Ryder Auto. Operations, Inc.</u>, No. 94 Civ. 151A, 1994 WL 705290, at *8 (W.D.N.Y. Nov. 1, 1994) (quoting <u>In re Air Crash Disaster at Mannheim, Germany</u>, 769 F.2d 115, 120 n.7 (3d Cir.1985)); <u>Datskow v. Teledyne Cont'l Motors Aircraft Prods.</u>, 807 F. Supp. 941, 944 (W.D.N.Y. 1992). However, these cases or the precedents on which they relied involved facts materially different from those alleged in this case. <u>Pan Am.</u>, <u>Champlain Enters.</u>, <u>Datskow</u>, and <u>In re Air Crash Disaster</u> all involved aircraft crashes. As the Appellate Division of the New York State Supreme Court explained in <u>Devore v. Pfizer Inc.</u>, 867 N.Y.S.2d 425 (App. Div. 2008), these scenarios "rendered the usual 'place of injury' rule incongruous" because the location of a crash is "purely adventitious," and therefore, courts chose the location of the manufacturing instead of the location of the crash as the situs of the tort. <u>Id.</u> at 428 (quoting <u>Pan Am.</u>, 213 N.E.2d at 798).

Meanwhile, under New York law, it is well-established that the situs of a product liability tort for choice-of-law purposes "is the place of the injury, rather than the location where the allegedly defective product was manufactured." Burnett v. Columbus McKinnon Corp., 887 N.Y.S.2d 405, 407-08 (App. Div. 2009). Thus, applying the loss-allocation laws of the location of injury in a split-domicile situation, as the Neumeier rules require, is consistent with this general principle regarding the situs of a product liability tort. E.g. Kniery v. Cottrell, Inc., 873 N.Y.S.2d 803 (App. Div. 2009) (applying the Ohio statute of repose to bar product liability claims arising out of an accident in Ohio in which a New York resident was killed after falling off a trailer manufactured by the defendant, a Georgia corporation); Burnett, 887 N.Y.S.2d at 407-08 (applying Indiana law to a case involving an injury of an Ohio resident in Indiana by a product of a New York manufacturer); Crowder, 2009 N.Y. Misc. LEXIS 4383, at *8-9 (applying the third Neumeier rule and determining that the statute of repose of Indiana, which was the locus of the tort, applied to bar the claim); see also Tanges v. Heidelberg N. Am., Inc., 710 N.E.2d 250 (N.Y. 1999) (applying Connecticut law to an injury sustained by a New York resident in Connecticut in a product liability case).[3]  Such a

---

[3] Several other cases cited by the defendants are not instructive because they concern other types of torts for which the interest

13

conclusion is also consistent with the approach stated in the Second Restatement of Conflict of Laws: in split-domicile, "true" conflict cases, such as the present case, if the place of conduct differs from the place of injury, the place of injury usually governs for choice of law purposes because "persons who cause injury in a state should not ordinarily escape liability imposed by the local law of that state on account of the injury" and "the place of injury is readily ascertainable . . . [,] lead[ing] to certainty of result." Restatement (2d) of Conflict of Laws § 146, cmt. e (1971).

Therefore, because the present case involves a "true" conflict between different loss-allocating rules, the second Neumeier rule requires the application of the law of the jurisdiction in which the injury occurred--in this case New York, and the Ohio statute of repose is inapplicable. Furthermore, because the Ohio statute of repose is the sole ground on which the defendants move to dismiss the product

---

analysis may be different. See Rutledge v. Rockwells of Bedford, Inc., 613 N.Y.S.2d 179, 181 (App. Div. 1994) (holding New York's dram shop laws applicable to a driver who became intoxicated in New York but caused an accident outside the State); Platano v. Norm's Castle, Inc., 830 F. Supp. 796, 798 (S.D.N.Y. 1993) (same); Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 158 (2d Cir. 2012) (applying New York law in a claim against financial institutions in New York for allegedly allowing wire transfers by terrorists and thereby indirectly causing injuries from rocket attacks in Israel).

14

liability claims (first and third counts), the defendants'
motion to dismiss these claims is **denied**.


## IV.

The defendants move to dismiss the plaintiff's breach of
warranty claim (second count) on the basis that the relevant
statute of limitations has run.  The applicable statute of
limitations for a breach of warranty claim involving a sale of
goods accrues on the date of the tender of delivery and is
either four years or six years depending on the date of accrual
at issue.  Compare N.Y. U.C.C. § 2-725(1) (four years under the
New York Uniform Commercial Code) and N.Y. Cent. Mut. Fire Ins.
Co. v. Glider Oil Co., 936 N.Y.S.2d 815, 819 (App. Div. 2011)
(same), with Citizens Utilities Co. v. Am. Locomotive Co., 184
N.E.2d 171 (N.Y. 1962) (six years of statute of limitations
before the Uniform Commercial Code went into effect).

However, because the defendants bear the burden of
establishing the expiration of the statute of limitations as an
affirmative defense, a pre-answer motion to dismiss on this
ground may be granted only if it is clear on the face of the
complaint that the statute of limitations has run.  See Staehr
v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir.
2008); Ashley v. Eastchester Police Dep't, No. 10 Civ. 7952,
2012 WL 234399, at *2 (S.D.N.Y. Jan. 6, 2012); In re Merrill

15

<u>Lynch Auction Rate Sec. Litig.</u>, 758 F. Supp. 2d 264, 274 (S.D.N.Y. 2010); <u>see also</u> <u>Frankel v. Cole</u>, 313 F. App'x 418, 420 (2d Cir. 2009).

In this case, the Complaint contains no information as to the date of the initial tender of delivery or of any subsequent tenders of delivery; nor is such information supplied by any documents referenced to in the Complaint or relied on by the plaintiff in bringing this action; there is also no document which the Court may take judicial notice of for that purpose. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). Because this is a motion to dismiss, the Court cannot rely on the documents produced by the defendants in support of the motion without converting the motion into one for summary judgment, <u>see</u> Fed. R. Civ. P. 12(d), which the Court has declined to do. Thus, there is no evidence before the Court regarding the dates of the relevant tenders of delivery, and the Court cannot dismiss the breach of warranty claim based on the statute of limitations. Therefore, the defendants' motion to dismiss the breach of warranty claim (second count) is **denied** without prejudice to making a motion for summary judgment.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss the first and third counts is **denied**, and the defendants' motion to dismiss the second count is **denied** without prejudice to making a motion for summary judgment.  **The Clerk is directed to close Docket No. 12.**  SO ORDERED.

Dated:   New York, New York
         December 12, 2013            _____/s/_____
                                          **John G. Koeltl**
                                      **United States District Judge**

17